# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2628

_____

Travelers Property Casualty Insurance Company of America, A Connecticut Stock
Insurance Company

*Plaintiff - Appellant*

v.

Jet Midwest Technik, Inc., A Missouri Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: April 11, 2018
Filed: July 31, 2018

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

This case involves a workers' compensation insurance carrier that brought a breach-of-contract action to recover unpaid insurance premiums. The district court dismissed the action, concluding that the insurer, before bringing a collection suit, first had to exhaust its administrative remedies. Because we conclude that the administrative procedures available to the insurer were too informal to require

exhaustion under then-applicable Missouri law, we reverse and remand for further proceedings.

I.

To benefit workers injured on the job, Missouri requires employers to purchase workers' compensation insurance. *See* Mo. Rev. Stat. § 287.060. Some employers cannot buy insurance on the open market, so Missouri supplements the open market with a residual market. *See id.* § 287.896. The Missouri Department of Insurance establishes the rules and rates for the residual market. *See id.* It assigns code classifications to different types of work depending on the potential risk of injury. *Cf. Travelers Indem. Co. v. Int'l Nutrition, Inc.*, 734 N.W.2d 719, 722 (Neb. 2007) (describing Nebraska's similar assigned-risk program). The assignment of these codes is the key component in determining an employer's rates.

When an employer buys a policy on the residual market, it pays an estimated premium upfront. The insurer then calculates the exact amount due from the employer at the end of the term based on the amount of work performed by employees in each of the various code classifications. If the employer's payroll involves more high-risk work than initially estimated, its actual premium at the end of the term will be higher than its estimated premium, so it will owe more to the insurer. When an insurer and employer disagree about the classification of work, they can resolve their dispute before an administrative panel, Missouri's Workers' Compensation Determinations Review Board (the "Board"), which has the power to modify code-classification determinations. *See* Mo. Rev. Stat. § 287.335(2). Missouri law additionally provides a right to appeal the Board's decision to the

Director of the Missouri Department of Insurance (the "Director"), who may also correct erroneous code-classification determinations. *Id.*

This dispute involves a workers' compensation policy sold by Travelers Property Casualty Insurance Company of America to Jet Midwest Technik, Inc. on Missouri's residual market. During the policy term, Travelers disputed some of the code classifications in Jet Midwest's policy application and demanded a higher premium. It did so based on an audit that allegedly revealed that Jet Midwest, which paints commercial-sized aircraft, had failed to accurately report some of its work. In particular, Travelers believed that Jet Midwest underreported the time its employees spent painting metal structures over two stories in height, which is in a higher risk category than the code classification assigned to the work by Jet Midwest.

Jet Midwest refused to pay the higher premium, prompting Travelers to cancel the policy. Travelers then issued a final bill, which Jet Midwest has paid only in part. Jet Midwest has vigorously disputed its responsibility for the remainder and filed an application with the Board to resolve the parties' code-classification dispute. The Board agreed with Travelers that Jet Midwest had misclassified some of the tasks it had workers perform, but not to the extent that Travelers had thought. The Board advised the parties that they could appeal the decision, but neither did so.

Travelers instead filed this lawsuit against Jet Midwest, invoking diversity jurisdiction and alleging state-law claims for breach of contract and account stated. Following discovery, the parties filed cross-motions for summary judgment. Travelers requested summary judgment on its breach-of-contract claim. Jet Midwest sought partial summary judgment precluding Travelers from relitigating the issues that the Board had already decided. The district court, for its part, adopted a different approach and dismissed the case based on Travelers' failure to fully exhaust its administrative remedies. It then denied the parties' competing summary-judgment motions as moot. Travelers argues on appeal that it had no obligation to exhaust its administrative remedies.

II.

At issue here is the scope of Missouri's exhaustion requirement. Missouri law requires parties to exhaust their administrative remedies in certain types of cases. *See Green v. City of St. Louis*, 870 S.W.2d 794, 796 (Mo. 1994). To fully exhaust, a party must complete "every step" of the administrative process. *See Parker v. City of Saint Joseph*, 167 S.W.3d 219, 221 (Mo. Ct. App. 2005). Failing to do so may preclude "judicial review of the [agency's] determination," although "nothing prevents" a party from raising any other claims or defenses that the agency did not resolve. *Impey v. Mo. Ethics Comm'n*, 442 S.W.3d 42, 48 (Mo. 2014).

Until recently, the applicability of the exhaustion requirement depended on whether a case was "contested" or "non-contested." These terms do not mean what they seem. They describe the degree of formality of the administrative procedures available, not the vigor of the parties' disagreement or the extent to which they have actively litigated the dispute. *See City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. 2009). As a class, contested cases provide the parties with "a measure of procedural formality," including "notice of the issues; oral evidence taken upon oath or affirmation and the cross-examination of witnesses; the making of a record; adherence to evidentiary rules; and written decisions including findings of fact and conclusions of law." *Id.* at 507 (internal quotation marks and citations omitted); *see also* Mo. Rev. Stat. § 536.010(4) (requiring a "hearing" for a case to qualify as contested). The same types of procedural protections are not available in non-contested cases; there is often no hearing or formal presentation of evidence and there may be no record available for a court to review. *See Furlong Cos. v.*

*City of Kansas City*, 189 S.W.3d 157, 165 (Mo. 2006) ("Non-contested cases do not require formal proceedings or hearings before the administrative body.").

-4-

Before the recent change in the law,[1] contested cases required exhaustion; non-contested cases did not. *State ex rel. Robison v. Lindley-Myers*, No. SC 96719, 2018 WL 2927735, at \*2–3 (Mo. June 12, 2018). If the case is non-contested, as Travelers argues, then reversal is required because, under the law applicable to this case, Travelers did not need to exhaust its administrative remedies. *See Robison*, 2018 WL 2927735, at \*2–4.

Although Missouri has decades of precedent on how to distinguish contested from non-contested cases, the categorization of the proceedings in this case presents a question of first impression.[2] Even so, categorizing the Board's proceedings is not difficult. After all, nothing in the statute establishing the Board and defining its authority requires it to follow any procedures in making a decision. *See* Mo. Rev.

---

[1]While this case was under submission, the Missouri Supreme Court overruled its precedent and held for the first time that "aggrieved parties must exhaust all their administrative remedies before seeking judicial review in a non-contested case." *See State ex rel. Robison v. Lindley-Myers*, No. SC 96719, 2018 WL 2927735, at \*3 (Mo. June 12, 2018), *overruling in part Strozewski v. City of Springfield*, 875 S.W.2d 905, 907 (Mo. 1994). *Robison* clarified, however, that the new rule "applies only prospectively," *id.* at \*3–4, meaning that it does not apply in this case, *see Koebel v. Tieman Coal & Material Co.*, 85 S.W.2d 519, 524 (Mo. 1935).

[2]Although no court has addressed this question, the Director has referred to both Board proceedings and the appeals from them as non-contested cases in administrative orders. Travelers discusses four of the Director's administrative orders in its reply brief and has moved for leave to submit the orders to us as part of a supplemental addendum. We grant the motion because Travelers relies on these orders as legal authorities, not record evidence. *Compare United States v. Sykes*, 356 F.3d 863, 865 (8th Cir. 2004) ("Generally, an appellate court cannot consider evidence that was not contained in the record below." (citation omitted)), *with* Fed. R. App. P. 28(j) (permitting citation to "pertinent and significant authorities" even "after the party's brief has been filed"); *see also* 8th Cir. R. 32.1A ("A party citing an unpublished opinion . . . which is not available in a publically accessible electronic database must attach a copy thereof.").

Stat. § 287.335. The parties are not required to appear or present oral evidence, and the absence of witnesses and the formal presentation of evidence eliminates the need for cross-examination and evidentiary rules. And although the Board issued a written decision in this case, nothing in the statute required it to do so. In short, the Board's proceedings are non-contested.

But we are not done. Even if the first stage of an administrative process is non-contested, the process as a whole can still qualify as contested if adequate procedures are available on appeal. *See, e.g.*, *Nowden v. Div. of Alcohol & Tobacco Control*, No. SC 96496, 2018 WL 2927729, at \*3 (Mo. June 12, 2018); *Kunzie v. City of Olivette*, 184 S.W.3d 570, 572–73 (Mo. 2006). Like the Board, however, the Director need not do anything more than make a decision. The applicable statute says only that an appeal "may be made to the [D]irector," Mo. Rev. Stat. § 287.335(2), and a separate regulation allows the Director to "secure such additional information [on appeal] as [she] deems necessary to make a decision," Mo. Code Regs. Ann. tit. 20, § 500-6.960(10)(A). Neither provides any guidance, however, on what procedures apply to the information-gathering actions of the Director.

Jet Midwest attempts to fill the gap through the general procedural rules governing contested cases brought before the Department of Insurance. *See id.* § 800-1.040. But these rules apply only to "hearings conducted pursuant to the enforcement procedures in sections 374.046 through 384.049, RSMo and other contested cases arising from provisions in Chapters 354 and 374 through 385," *id.*

§ 800-1.010(1), not appeals from the Board to the Director, which arise under Mo. Rev. Stat. § 287.335.

In sum, neither stage in the administrative process qualifies as a "contested case" under Missouri law. Accordingly, the district court erred by dismissing this

case because Travelers had no obligation to exhaust its administrative remedies before filing its lawsuit.[3]

### III.

We reverse the decision of the district court and remand for further proceedings consistent with this opinion.

_____

---

[3]Travelers asks us to reach the merits of its summary-judgment motion, which the district court denied as moot. Because "[t]he district court did not reach" the merits of the motion and it "raises complex factual and legal questions," we remand for the district court to consider it in "the first instance." *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 887 (8th Cir. 2014) (internal quotation marks and citation omitted).